IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL S. HUNTER,

                                    OPINION AND ORDER

        Plaintiff,

                                    17-cv-910-bbc

  v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Michael S. Hunter is seeking review of a final decision denying his claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that he has been disabled since 2009 because of back and leg pain. The administrative law judge concluded that even though plaintiff has severe impairments, he is not disabled because he can perform sedentary work, including his previous job as a telemarketer. As explained below, I agree with plaintiff that the administrative law judge did not cite sufficient evidence to support his residual functional capacity assessment and failed to conduct a proper analysis of plaintiff's subjective complaints. Therefore, I am remanding this case for further proceedings.

      The following facts are drawn from the administrative record (AR).

1

FACTS

A. Social Security Applications and Background

Plaintiff Michael Hunter was born in 1963. He filed for disability insurance in May 2014, contending that he had been disabled because of back problems and high cholesterol since February 2009. AR 168. His application was denied initially and on reconsideration, AR 87, 97, and he requested a hearing before an administrative law judge. AR 104. A hearing was held on December 8, 2016, with an unfavorable decision issued on February 16, 2017. AR 16. The appeals council denied plaintiff's request for review, AR 1, making the hearing decision the final decision of the commissioner.

B. Overview of Medical Problems and Treatment

Plaintiff has a history of low back and leg pain. He had back surgery in 1987. AR 213. In March 2009, his back and leg pain had become debilitating and he began receiving treatment from a Mayo Health pain management clinic. AR 208. Dr. Stephen Endres, the physician at the pain clinic, noted that a recent magnetic resonance imaging showed "multiple abnormalities with severe degenerative changes at lumbar 4-5 and 5-1 with signs of annular tears at lumbar 4-5 and 5-1 with disk protrusions." Id. Endres stated in a March 2009 report that, "I do truly believe that he has pathology on his MRI that does match his symptomatology." AR 284. Endres treated plaintiff with an injection that helped reduce his pain. AR 209.

Plaintiff received a total of seven epidural steroid injections from Dr. Endres between 2009 and 2014, with the most recent on January 2, 2014. AR 212; 216. The injections helped plaintiff's pain significantly, AR 222, 224, 226-27, 230, but did not take away the pain completely. AR 486. At some of his appointments with Dr. Endres, plaintiff reported that he had been doing well; at other appointments, he would report that his pain had worsened and he needed another injection. E.g., AR 220, 222, 224, 299. At a November 2012 appointment, plaintiff reported that he had been taking care of his father, who was in a wheelchair, and that the frequent bending, twisting, turning and carrying had exacerbated his pain. AR 220. Plaintiff also used gabapentin and hydrocodone at various times from 2009-2014, but tried to avoid habit-forming medications because he has a history of alcohol abuse. AR 213.

### C. Dr. Fitzgerald's Opinion

In June 2014, Dr. Endres referred plaintiff to Dr. Michael Fitzgerald, an occupational medicine doctor at the Mayo Clinic, so that Fitzgerald could evaluate plaintiff for purposes of his disability application. AR 212. On the date of the evaluation, plaintiff reported that he was "having a better day today," and Fitzgerald noted that plaintiff was in "no acute distress at this time." AR 213. Fitzgerald conducted an examination and noted that plaintiff did "not have tenderness" in his spine; his "straight leg raising [wa]s negative for radicular symptoms"; plaintiff was able to walk on his heels and toes, squat and recover with normal strength and flex forward approximately 80 degrees at the waist. AR 214. Fitzgerald noted

3

that plaintiff had some pain and tightness in his back and weakness and atrophy in his left leg.  Id.

Dr. Fitzgerald concluded from his review of medical records, from plaintiff's statements and from the examination that although plaintiff did not have "persistent disorganization of motor function," he did have "persistent pain and unpredictable episodes of exacerbation."  Id.  Fitzgerald further concluded that plaintiff "would have difficulty attending full-time employment because of the pain symptoms," particularly because plaintiff has a "fairly regular regimen of stretching and icing that he goes through everyday" and "has a need to lie down during the course of a day."  Id.  Finally, Fitzgerald stated that plaintiff "would likely be missing work on an unpredictable basis, but still fairly regularly."  Id.

### D.  Administrative Hearing

At the December 8, 2016 video hearing, plaintiff testified that he worked as a telemarketer from 2004 to 2009, but could work only part-time, about four or five hours a day, because of his back pain.  AR 39, 42.  In his most recent position as a telemarketer, he spent about two hours of the day sitting and two or three hours walking the floor and helping other telemarketers with their calls.  Id.  Plaintiff stopped working completely in 2009 because his back pain became unbearable and made it nearly impossible to move, sit, stand, walk around or concentrate while on the telephone with people.  AR 41-42, 46.  Between 2009 and 2014, plaintiff had many "bad days" in which he could not do anything

4

but lie in bed, ice his back and wait for the pain to subside. AR 48-49. Plaintiff testified that between 2009 and 2014, he could not sit for more than 30 minutes at a time in a chair before he had to stand up, walk around, stretch, bend and ice his back. AR 47. He could stand between 15 and 30 minutes at a time, as long as he could keep weight off of his left leg. AR 47.

At the time of the hearing, plaintiff was taking vicodin and gabapentin, both of which helped with the pain, but also caused clumsiness and confusion. AR 36, 52. He testified that the steroid injections he received from Dr. Endres helped, but he could not continue with them because they cost $3,000 each and his insurance did not pay for them. AR 35-36, 52. His insurance also does not pay for his pain medication. AR 52, 55.

Plaintiff testified that he can usually drive himself when he needs to go somewhere, AR 37, but he does not do any chores around the house except feed his cat. AR 50. He stated that he spends most of his day stretching his back or watching television while lying in a recliner. AR 45. He lies down about three times a day for 30 to 45 minutes with ice on his back and leg. AR 49. Plaintiff also testified that sitting down is the most difficult position and that he can no longer sit and fish in a boat. AR 46. His pain is less severe if he can move, stretch, bend, stand and lie down. AR 48-50.

In addition to plaintiff, a vocational expert testified. The administrative law judge asked the vocational expert whether a hypothetical person between 45 and 50 years of age could perform plaintiff's past jobs as they are generally performed or as plaintiff actually performed them, if the person had the following limitations:

5

> limited to sedentary work; climbing ramps and stairs is limited to occasional; climbing ladders, ropes or scaffolds is limited to occasional; stooping is limited to occasional; kneeling is limited to occasional; and crouching is limited to occasional.

AR 57. The vocational expert testified that such an individual could perform plaintiff's past work as a telemarketer as actually and generally performed, as well as a few other jobs that exist in significant numbers of the national economy. AR 58. The administrative law judge then asked whether the telemarketing job typically allows a sit or stand option, and the vocational expert responded that "[t]ypically the job is not advertised as a job that can be done sitting or standing," and typically someone would be sitting eight hours of the day. AR 58-60. The vocational expert went on to state that, "[t]here would be in some instances an opportunity for perhaps limited sitting and standing, but that's not typically the way this job is performed." Id. However, the vocational expert also said that, "now with the technology that the job currently has," "I would not be comfortable saying at all that you could not perform it in a sit/stand fashion; it's just not typically done that way, but it certainly, as long as you were remaining in your workspace area, I think the job in many cases could be done standing on an alternate basis. . . ." AR 60. Finally, the vocational expert said that if somebody was off-task more than ten percent of the time, needed to take breaks to lie down for a half hour three times a day, missed more than one day a month on an ongoing basis or was limited to unskilled work because of pain, concentration, persistence or pace problems, the person could not perform the job of a telemarketer. AR 61-62.

E.  <u>Administrative Law Judge's Decision</u>

The administrative law judge found that plaintiff had not engaged in substantial gainful activity since his alleged onset date on February 1, 2009, through the date plaintiff had last been insured on March 31, 2014.  AR 18.  The administrative law judge next found that plaintiff's reconstructive surgery of a weight bearing joint and degenerative disk disease were severe impairments, <u>id.</u>, but that the impairments did not meet or medically equal the severity of a listed impairment.  AR 19.

The administrative law judge found that, through the date plaintiff had last been insured, he had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).  AR 19.  He found that plaintiff would be limited to lifting, carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds frequently; sitting for six hours, standing for two hours and walking for two hours; stooping, kneeling, crawling and climbing ramps, stairs, ladders, ropes and scaffolds occasionally.  <u>Id.</u>

The administrative law judge concluded that plaintiff's subjective complaints about his back and leg problems were not consistent with the medical evidence in the record or plaintiff's own reports about his activities.  The administrative law judge stated that plaintiff was able to care for his personal hygiene, cook, shop, drive, shovel snow and care for his wheelchair-bound father.  He also stated that plaintiff was able to walk a mile each day and enjoyed dancing and attending rock concerts.  AR 20.

The administrative law judge gave little weight to the opinion of Dr. Michael Fitzgerald, believing that the doctor's opinion was inconsistent with his stated findings.  AR

20. The administrative law judge noted that Fitzgerald's examination showed that plaintiff was in "no acute distress," "straight leg raising tests produced negative results for radicular symptoms" and plaintiff could "squat and recover with normal strength." Id. The administrative law judge found that Fitzgerald's notes describing plaintiff's "antalgic gait" and "some degree of atrophy" in plaintiff's left leg were not sufficient to support "the extreme opinion that [plaintiff] would miss work on a regular basis." Id.

The administrative law judge gave great weight to the assessments of the two state agency medical consultants who found that Dr. Fitzgerald's opinion was overstated and that plaintiff could perform sedentary work on a regular basis with postural limitations. AR 21.

Finally, the administrative law judge noted that the vocational expert testified that a hypothetical person with plaintiff's residual functional capacity could perform his past work as a telemarketer. Id. The administrative law judge found the vocational expert's testimony credible. Id.

OPINION

Plaintiff contends that the administrative law judge erred by (1) failing to support the residual functional capacity assessment with substantial evidence; (2) failing to conduct a proper analysis of plaintiff's subjective complaints; and (3) concluding that plaintiff could perform his past relevant work as a telemarketer. All of plaintiff's arguments are related, in that plaintiff argues that the administrative law judge failed to adequately explain why he discounted plaintiff's statements regarding his pain, inability to sit for extended periods and

8

how he performed his prior job, as well as the medical evidence that supported plaintiff's statements.

In reviewing the administrative law judge's decision, the court determines whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." Id. See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

In this case, the administrative law judge failed to build a logical bridge between the evidence and his residual functional capacity assessment. In particular, the administrative law judge did not sufficiently address plaintiff's testimony regarding his back and leg pain and the effects his pain had on his ability to concentrate. Additionally, the administrative law judge did not adequately discuss the medical and nonmedical evidence supporting plaintiff's statements.

Plaintiff gave extensive testimony describing his back and leg pain and the limitations his pain caused. Plaintiff stated that during the relevant time period, he could not sit for more than 30 minutes at a time before needing to stand up, walk around, stretch, bend and

9

ice his back. AR 47. Plaintiff also testified that he spends most of his day stretching or icing his back or lying down in a recliner, and that he does not do any chores around the house except feed his cat. AR 45, 50. He stated that he lies down about three times a day for 30 to 45 minutes with ice on his back and leg. AR 49. Finally, he testified that his pain made it impossible to concentrate on telephone calls and that his pain medications caused clumsiness and confusion. AR 35-36, 52.

The administrative law judge did not address plaintiff's specific allegations beyond stating that plaintiff's alleged limitations were "inconsistent" with medical and nonmedical evidence. AR 20. In reviewing the medical evidence, however, the administrative law judge did not adequately discuss the evidence that supported plaintiff's allegations. He did not discuss Dr. Endres' or Dr. Fitzgerald's conclusions that plaintiff's magnetic resonance imaging showed abnormalities in his spine that would support the symptoms plaintiff described. AR 212, 284. Instead, he relied on Fitzgerald's examination notes that discussed plaintiff's straight leg tests, ability to squat and current state of distress. AR 20. However, the administrative law judge failed to explain why he believed the results of those tests undermined plaintiff's statements regarding his ability to sit for extended periods and the need to twist, bend, lie down and ice his back and leg.

The commissioner argues that the administrative law judge properly relied on the opinions of state-agency doctors who thought Fitzgerald's opinions were extreme and believed plaintiff could perform sedentary work. But the state-agency doctors also did not explain how Fitzgerald's examination undermines plaintiff's statements about pain or his

10

inability to sit for extended periods. According to Fitzgerald, the tests showed that plaintiff did not have "persistent disorganization of motor function," but did not undermine plaintiff's statements regarding pain. AR 214. By failing to explain clearly why he believed Fitzgerald's examination undermined plaintiff's allegations, the administrative law judge failed to "build a logical bridge" between the evidence and his conclusions. Villano, 556 F.3d at 55 (although "[t]he ALJ is not required to discuss every piece of evidence, [he] must build a logical bridge from evidence to conclusion").

With respect to nonmedical evidence, the administrative law judge stated that plaintiff's description of his pain was undermined by evidence showing that he could perform household tasks and engage in other activities, such as shoveling snow, walking, dancing, attending rock concerts and taking care of his wheelchair-bound father. AR 20. The commissioner argues that the administrative law judge adequately explained that plaintiff's ability to engage in these activities undermined plaintiff's statements about his symptoms. However, the Court of Appeals for the Seventh Circuit has held that "although it is appropriate for an ALJ to consider a claimant's daily activities . . . this must be done with care. We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013) (collecting cases).

The administrative law judge's reliance on plaintiff's ability to engage in various activities is particularly problematic in this case. The administrative law judge cited reports

from two medical appointments at which plaintiff reported doing well. AR 352-53 (plaintiff reports to primary care doctor in March 2011 that he was doing well and trying to be active with regular walking); AR 524 (appointment with primary care provider in April 2013 at which plaintiff did not report pain). However, many of the records cited by the administrative law judge suggest that plaintiff's "activities" exacerbated his low back and leg pain and caused him to seek steroid injections. E.g., AR 262 (plaintiff sees Dr. Endres in November 2012 for "severe exacerbation of low back and leg pain," explaining that he has been acting as primary caregiver for his father which has required "bending, twisting, and turning and carrying and it has exacerbated his pain"); AR 259 (plaintiff sees Dr. Endres in January 2014 for "severe exacerbation of low back and leg pain" that was "probably secondary to shoveling"); AR 288 (plaintiff visits hospital in January 2014 for back pain that flared while was "getting ready to go out . . . and was dancing"). The administrative law judge did not explain how evidence that plaintiff sought treatment after engaging in physical activities, none of which involved sitting, undermined plaintiff's statements regarding his limitations. Scrogham v. Colvin, 765 F.3d 685, 700 (7th Cir. 2014) ("Surely, this type of ill-advised activity cannot support a conclusion that [claimant] was capable of performing full-time work.").

The administrative law judge also did not explain why plaintiff's engaging in a few physical activities suggests that plaintiff could focus on a particular tasks or remain engaged in a specific activity for a sustained period of time on a daily basis, despite his back and leg pain and need to ice his back regularly throughout the day. For all of these reasons, I

conclude that the administrative law judge's residual functional capacity is not supported by substantial evidence. Forsythe v. Colvin, 813 F.3d 677, 679 (7th Cir. 2016) ("[E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40–hour–a–week job is perilous."); Krusec v. Colvin, No. 15-CV-498-JDP, 2016 WL 3703088, at *2 (W.D. Wis. July 8, 2016) (remanding case where "the record as a whole indicates that Krusec experienced difficulty sitting and standing for prolonged periods of time, yet the [residual functional capacity] reflects no concession to this limitation."). Therefore, the case must be remanded so that the administrative law judge can conduct a more thorough analysis of the medical record, properly analyze plaintiff's subjective complaints and give valid reasons for his findings that are supported with substantial evidence in the record.

Finally, plaintiff argues that the administrative law judge erred in concluding that plaintiff could perform his past relevant work as a telemarketer both as he actually performed it, and as it is generally performed in the economy based on testimony from the vocational expert. Smith v. Barnhart, 388 F.3d 251, 252 (7th Cir. 2004) (administrative law judge must consider whether claimant "could perform the duties of the specific jobs that she had held"). I agree with plaintiff that the administrative law judge's findings in this regard are somewhat confusing. Plaintiff testified that in one of his previous positions, he sat for about two hours and stood or walked around for two to three hours, AR 39, 42, while the vocational expert noted that most telemarketers sit for close to eight full hours out of the workday and that most telemarketing jobs do not advertise a sit or stand option. AR 59-60.

13

On the other hand, the vocational expert later clarified that he thinks most telemarketing jobs could be performed with a sit or stand option, so long as the employee stayed near his workstation. AR 60.

The commissioner argues that the administrative law judge's acceptance of the vocational expert's opinion was reasonable and, in conjunction with plaintiff's testimony about his prior job, supports the conclusion that plaintiff could work as a telemarketer. However, because the administrative law judge stated that plaintiff had the residual functional capacity to perform sedentary work, including sitting for six hours and standing for no more than two, it is not clear whether the administrative law judge believed plaintiff could perform his prior job that required walking around for up to three hours. It also is not clear whether the administrative law judge found it significant that telemarketing may be performed with a sit or stand option, as he did not provide a sit or stand option in plaintiff's residual functional capacity. In sum, the administrative law judge's conclusions about plaintiff's ability to perform the job of telemarketer are unclear. Thus, regardless whether this would be an independent reason to remand this case, the next administrative law judge who handles the case should explain more clearly the demands of plaintiff's prior work and plaintiff's ability to meet those demands.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Michael S. Hunter is REVERSED and this case is REMANDED to defendant Acting Commissioner of Social Security Nancy A. Berryhill for further proceedings consistent with this opinion.

Entered this 9th day of November, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge